NATHAN BASS, plaintiff in error, *vs.* WILLIAM FREEMAN, Sr., defendant in error.

NOTE.—WARNER, C. J., did not preside in this case.

1. The doctrine in the cases of Hand *vs.* Armstrong, 34 Ga., 232 ; Freeman *vs.* Bass, Ib., 355, and Bass *vs.* Ware, Ib., 386, re-affirmed.

Assumpsit.   Warranty.   Emancipation of slavery, &c. Tried before Judge Cole.   Bibb Superior Court.   November (adjourned) Term, 1866.

On the fifth day of November, 1858, Nathan Bass bought in Chicot county, Arkansas, from William Freeman, Sr., nineteen hundred and fifty-nine and 23-100 acres of land in said county, and seventy-three slaves.

He gave therefor his promissory notes of that date, payable to said Freeman, or bearer, as follows : for $20,000.00 due 1st January, 1859, and for $28,200.00 due on the 1st of January, on each of the following years : 1860, 1861, 1862, 1863 and 1864, all, except the first, bearing interest from 1st January, 1859.   In return, Freeman gave to him a bond of that date, describing fully the lands and the negroes (calling them "slaves for life") conditioned to make such title to the lands as Freeman had upon payment of the purchase, money aforesaid. Freeman therein agreed to allow Bass to recover and appropriate a claim for $5,000.00 growing out of a dispute as to

the title of a portion of the land, and agreed to deliver him possession of said lands, slaves, (and other personalty) that day sold to him, on the 1st January, 1859, or sooner, if the crop was gathered, unless the delivery was prevented by death, fire or other casualty, not resulting from Freeman's carelessness or negligence.

On the same day and at the same place, said Freeman gave him a bill of sale to said slaves, describing them by their names and ages, and as being "slaves for life, now upon the plantation, this day purchased by said Bass from said Freeman, situated in Chicot county, and State of Arkansas," and for the entire stock of mules, horses, cattle and hogs, corn, fodder, wagons, carts, blacksmith's tools, gins, cotton-seed, household and kitchen furniture, ploughs, plantation tools, and all other property of a perishable nature on or belonging to said plantation.

The consideration expressed in the bill of sale was $73,-000.00, (without more) and for that consideration, Freeman warranted that the title to said slaves was good and unincumbered, and that all of them except Louisa, was sound in body and mind.

This action was founded on the last of said promissory notes. Bass plead that the consideration of this note had wholly failed, because it was a part of said consideration of $73,000.00 given for said slaves, that Freeman had covenanted that said slaves should remain slaves for life, and that by the Constitutions of Georgia and of the United States, said slaves and their issue had been emancipated, and thereby lost to the defendant, damaging him $150,000.00, further that the consideration had partially failed because said slaves had been taken from him and set free to his damage $100,000.00, that Freeman had retained title to said slaves in himself, and because of emancipation, cannot make a title to defendant for them, averring that this is so by the laws of Arkansas, the *locus* of the contract, that the prosecution of this suit was in violation of Act of Congress of the United States of 17th July, 1862, and of the amnesty proclamation of 29th May, 1865, and lastly, that by Act of Congress of the United

States, and by proclamation of the President thereof, said slaves had been emancipated before this note fell due, and for these reasons prayed judgment against said plaintiff.

At the trial, plaintiff read in evidence said note and closed.

The defendant read in evidence said bond and certain admissions of plaintiff, to-wit: that in 1862 defendant brought said negroes from Arkansas, when the Federal army overrun that State, to Georgia, that plaintiff filed a bill in equity in the Superior Court of Bibb County, Georgia, returnable to May term, 1864, enjoining the sale of said slaves by defendant, and praying that by decree of the Court, they should be sold and proceeds applied to the payment of what was due under said contract, which bill was pending till November term, 1865, when plaintiff dismissed it. It was also admitted that said slaves were in defendant's possession "till they were emancipated by the military authority of the United States in April, 1865," except a few that had died, whose loss was equalled by those that had been born.

Defendant also read in evidence the statutes of Arkansas, as follows:

Chapter 34, section 1, Code of Arkansas, page 254. " The common-law of England, as far as the same is applicable and of a general nature, and all statutes of the British Parliament in aid of or to supply the defects of the common-law, made prior to the fourth year of James the First (that are applicable to our form of government) of a general nature, and not local to that kingdom, and not inconsistent with the Constitution and laws of the United States, or the Constitution and laws of this State, shall be the rule of decision in this State, unless altered or repealed by the General Assembly of this State."

Chapter 117, sections 18 to 21, inclusive, of said Code.

"If any mortgagee, his executor, administrator or assignee, shall receive full satisfaction for the amount due on any mortgage, he shall, at the request of the person making satisfaction, acknowledge satisfaction thereof on the margin of the record on which such mortgage is recorded."

" If any person thus receiving satisfaction, do not, within

sixty days after being requested, acknowledge satisfaction as aforesaid, he shall forfeit to the party aggrieved, any sum not exceeding the amount of the mortgage money, to be recovered by action of debt, in any court of competent jurisdiction."

" Such acknowledgment of satisfaction made as aforesaid, shall have the effect to release the mortgagee and bar all actions brought thereon, or revest in the mortgagor or his legal representatives, all title to the mortgaged property."

" If such mortgaged property be redeemed by payment to the officer before sale, such officer shall make a certificate thereof and acknowledge the same before some officer authorized to take acknowledgment of deeds for lands, and such certificate shall be recorded in the office in which the mortgage is recorded, and shall have the same effect as satisfaction entered on the margin of the record."

Defendant closed. Plaintiff then read in evidence said bill of sale and closed.

Defendant's attorney requested the Court to charge the jury:

" 1st. If the evidence shows the note, bond and bill of sale were executed at the same time and were about the same subject-matter, then the whole formed one contract, and they must be construed as making one entire contract.

" 2d. If the evidence showed that the contract was made and to be executed in the State of Arkansas, then the laws of that State governed as to its interpretation, and that in failure of payment by defendant, the title and right of possession to the slaves became united and perfect at law in plaintiff, and being his, on emancipation the loss was his and not defendant's.

" 3d. That the prosecution of this action, (if the proof be as stated in the charge above asked for,) is in violation of the amnesty proclamation of the President of the United States of May 29th, 1865, and plaintiff is not entitled to recover.

" 4th. That if the proof be as above stated, then the prosecution of this action is in violation of the act of Congress known as the Civil-Rights-Bill, and the plaintiff is not entitled to recover.

" 5th. That if the note in controversy was given for slaves, and the slaves have been emancipated, then the consideration has failed, and the jury will find for the defendant.

" 6th. On the facts proved, plaintiff is not entitled to recover interest on this claim pending the civil war between the so-called Confederate States and the United States."

The Court refused to charge any of said requests except the first.    He charged the first request, and that " the note sued upon may have been given for slaves and the slaves subsequently emancipated, yet such emancipation was the loss of the defendant and not of the plaintiff, and such subsequent emancipation formed no valid defence to this action."

The verdict was for the principal and interest due on the note, with costs of suit.

The errors assigned are the refusals to charge as requested, and the charge as given.

B. HILL, for plaintiff in error.

O. A. LOCHRANE, for defendant in error.

WALKER, J.

When this case was called, counsel for plaintiff in error stated that the points made in the case had already been decided against him by this Court, and he did not ask to re-argue them.    He stated, as a reason for bringing up the case, that he desired to get it in a shape to enable him to carry it to the Supreme Court of the United States, and wished a judgment *pro forma* to enable him to do so.

1. Our reasons for affirming this judgment may be found in the cases of Hand vs. Armstrong, 34 Ga. R., 232; Freeman vs. Bass, ib., 355; and Bass vs. Ware, ib., 386.    With the reasons then given and the points decided, we are fully satisfied, and reiterate the doctrines then enunciated.    Subsequent reading and reflection have but strengthened our convictions of the correctness of the conclusions to which we then came.

As the counsel stated a satisfactory reason for bringing up

a case which he admitted had already been decided by this Court, we do not award damages against his client, as we otherwise would have felt it our duty to do. This is a power we hope we may not often be required to exercise; yet whenever we may think a cause shall have been brought up for delay only, we shall not be slow to visit the consequences on the party who may thus abuse the powers and processes of the Court. See Code, 4182.

Judgment affirmed.